UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORIE STERLING and SOPHIA STERLING, | |
| Plaintiffs, | |
| vs. | Case No.: 2019 CV 5599 |
| BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT 202; ERIC WITHERSPOON; MARCUS CAMPBELL; MARVIN RHONE; MICHAEL HAYWOOD, | Honorable Rebecca R. Pallmeyer |
| Defendants. | |

**PLAINTIFFS JORIE AND SOPHIA STERLING'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS.**

Plaintiffs, Jorie Sterling ("Jorie"), and Sophia Sterling ("Sophia") submit this memorandum in opposition to Defendants' 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (the "Complaint").

## I. INTRODUCTION

Defendants have moved for dismissal based on the Board of Education of Evanston Township High School District 202 (the "Board"), Eric Witherspoon ("Witherspoon"), and Marcus Campbell's ("Campbell") (collectively, the "District Defendants") lack of knowledge as to any sexual misconduct committed by Safety Officers Marvin Rhone ("Rhone") and Michael Haywood ("Haywood"). Plaintiffs have alleged that Rhone and Haywood sexually groomed and engaged in unwanted and unlawful sexual contact with Jorie, and that both the Board and District Defendants knew about these acts in violation of Title IX and the Fourteenth Amendment under § 1983. Further, the Complaint alleges that Rhone and Haywood were acting within the scope of their employment while engaging in the sexual harassment of Jorie, such that the District Defendants are vicariously liable for their employees' conduct under the doctrine of *respondeat superior*. Plaintiffs, therefore, have adequately pleaded all claims alleged in the Complaint, and Defendants' motions to dismiss should be denied.

## II. STATEMENT OF FACTS

In or about 2015, Rhone began sexually grooming Jorie using his position as an Evanston Township High School ("ETHS") Safety Officer. Am. Compl. ¶ 32. This grooming included making multiple phone calls to Jorie on her cell phone during and after school, buying her gifts, and sending her text messages containing sexual and/or pornographic content and language. *Id.* at ¶ 33. These exchanges escalated in 2015 and 2016 when Rhone engaged in over 50 unlawful sexual acts and other contact with Jorie, who, at the time, was a minor. *Id.* at ¶ 34. This unlawful conduct occurred in and around school property, including in Rhone's car parked in the vicinity of

1

the school. *Id. at ¶* 35. Eventually, Witherspoon and Campbell terminated Rhone in or about June 2016. *Id. at ¶* 36.

Defendant Haywood was hired by ETHS as a Safety Officer in September of 2018. *Id. at ¶* 37. Immediately, Haywood, who was aware that Jorie was an Individualized Education Program ("IEP") student, began sexually targeting Jorie, as well as two other 16-year old female ETHS students. *Id. at ¶* 38. Haywood began sexually grooming Jorie and other ETHS students by, among other methods, making calls to Jorie and other students outside school hours; sending text messages to Jorie and other students during and outside school hours containing sexual or pornographic language and content; sending pornographic and/or sexual photographs to Jorie and other female students during and outside school hours; pressuring Jorie and other students to send pornographic photographs to him; receiving pornographic photographs from Jorie and other students; encouraging Jorie and other students to smoke marijuana and drink alcohol with him; using the ETHS pass system to reward or punish Jorie and other students; and pressuring Jorie and other students to engage in sexual acts. *Id. at ¶* 40. Haywood also regularly escorted Jorie to the ETHS "Chrome Zone" and to the ETHS "Hub," which were commons areas for students, teachers, and counselors. *Id. at ¶* 39. Between September 2018 and January 2019, Haywood engaged in over 40 unlawful sexual and/or inappropriate contacts with Jorie. *Id. at ¶* 41.

Haywood's sexual abuse and conduct was open, ongoing, persistent, and widespread, such that it was common knowledge, obvious, and/or readily apparent to some (if not all) ETHS staff when it was occurring. *Id. at ¶* 42. Haywood also knew that ETHS was aware of his conduct. In a text message to Jorie, he informed her that other teachers had noticed that they had been spending a lot of time together and that Jorie always was looking at Haywood "in a certain way." *Id. at ¶*

43. Haywood's conduct was so widespread, frequent, and readily apparent that ETHS staff either had actual knowledge and/or knew and deliberately turned a blind eye to his conduct. *Id. at ¶* 44.

Therefore, ETHS, Witherspoon, Campbell, and other ETHS teachers, counselors, and staff knew of allegations that Haywood had sexually groomed and had unlawful sexual contact with Jorie and other ETHS students. *Id. at ¶* 45. Despite their knowledge, no timely action was taken by ETHS, the Board, or other ETHS personnel to protect Jorie and other ETHS students from Haywood's continued inappropriate conduct. *Id. at ¶* 46. Further, Witherspoon, Campbell, Toya Campbell, Taya Kinzie, Matthew Driscoll, Terrance Doby, and other ETHS teachers, counselors and staff all had knowledge of Haywood's abuse and were required to report the abuse pursuant to Illinois Abused and Neglected Child Reporting Act ("ANCRA"), Title IX, and the Board and ETHS's policies and procedures. *Id. at ¶* 47. Despite these laws, regulations, policies, and procedures, they failed to report or stop the abuse.

Haywood was ultimately terminated from his employment at ETHS on January 14, 2019. *Id. at ¶* 54. He is currently facing a criminal sexual assault charge for his conduct toward a minor ETHS student other than Jorie Sterling. *Id. at ¶* 55. After Haywood's termination, ETHS, Witherspoon, and Campbell failed to disclose to the parents of ETHS students, including Plaintiff Sophia, the allegations about Haywood; failed to provide Jorie accommodations and support to ameliorate the harm done to her by Haywood; suppressed information about the allegations about Haywood's sexually harassing behavior toward Jorie and other ETHS students; and failed to otherwise take actions to protect Jorie from further harm at the hands of ETHS employees. *Id. at* ¶ 56.

### III. STANDARD OF REVIEW

Under F.R.C.P. 12(b)(6), the court must accept all well-pleaded facts as true and draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *AnchorBank,*

3

*FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A motion to dismiss challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "The standard a defendant must meet to have a claim dismissed [on a motion to dismiss] is … a high one. Dismissal is improper 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The complaint must only provide the defendant with fair notice of claims and be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. "[T]he court must construe the pleadings liberally, and mere vagueness or lack of detail alone will not constitute sufficient grounds to dismiss a complaint." *Strauss*, 760 F.2d at 767.

### IV. ARGUMENT

#### A. PLAINTIFFS HAVE SUFFICIENTLY PLEADED § 1983 CLAIMS AGAINST DEFENDANTS WITHERSPOON AND CAMPBELL.

##### 1. Campbell's and Witherspoon's Inaction Constitutes Personal Involvement in Unconstitutional Conduct.

The Complaint adequately pleads claims against Defendants Witherspoon and Campbell for violations of Jorie's Due Process and Equal Protection rights, pursuant to 42 U.S.C. § 1983. The allegations concerning Witherspoon and Campbell's inaction and deliberate indifference to the harm Jorie and other students experienced when ETHS Safety Officers Rhone and Haywood openly and notoriously preyed upon, groomed, harassed, and sexually assaulted Jorie, a minor female student, on and near school grounds sufficiently states a claim under both the Due Process Clause and the Equal Protection Clause. *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997).

4

In a § 1983 case, officials who are not active participants in the abuse can be held liable in their individual capacities when they are "personally responsible for the deprivation of a constitutional right[,]" *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), which can be "inferred if a defendant knew about the conduct, and facilitated it, approved it, condoned it, or turn[ed] a blind eye." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Here, the Complaint sufficiently alleges that both Witherspoon and Campbell either facilitated, approved, and condoned the conduct of their Safety Officers or deliberately turned a blind eye to this rampant and open conduct. *See* Am. Compl. ¶¶ 44 - 46.

Further, allegations of a "plan or pattern of incidents" can also demonstrate that a defendant has been put on notice of the inappropriate conduct, as occurred here. *Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir. 1983). Both Witherspoon and Campbell were put on notice by the predatory, harassing, and unlawful conduct of Rhone, which led to his termination from ETHS. *See* Am. Compl. ¶¶ 33-36. Despite knowing of Rhone's conduct, Witherspoon and Campbell did not institute changes to their trainings, protocols, or procedures to ensure that such unlawful conduct by an ETHS employee would never happen again. Thereafter, Haywood engaged in the same unlawful activity that his predecessor had engaged in, yet when faced with the unlawful sexual abuse, Witherspoon and Campbell allowed it to continue and turned a blind eye to Haywood's open and notorious unlawful conduct. *Id.* at ¶¶ 44-46.

Defendants erroneously assert that Plaintiffs make a *respondeat superior* argument in support of their Due Process and Equal Protection claims, Def. Mem. In. Supp. of Mot. To Dismiss at 7, but that argument is incorrect and misconstrues the law. Defendants ignore that the Seventh Circuit has long held a plaintiff meets the personal responsibility requirement of a §1983 claim if she alleges that "supervisory officials. . . had some personal involvement in the constitutional

5

deprivation, essentially directing or consenting to the challenged conduct." *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001); *Gentry v. Duckworth*, 65 F.3d, 561 (7th Cir. 1995). Plaintiffs have adequately alleged that Witherspoon and Campbell knew about Rhone's and Haywood's unlawful conduct toward Jorie because the Safety Officers' actions were so open, notorious, and apparent that turning a blind eye toward the unlawful conduct was the only way Witherspoon and Campbell could have denied knowledge, and thus implicitly condoned their actions. *See* Am. Compl. ¶¶ 33, 46, 48.

Witherspoon and Campbell were also responsible for the implementation and maintenance of the District's policies, including procedures relating to the prevention and reporting of any abuse or unlawful discrimination directed at ETHS students. Despite knowing of the conduct exhibited by Rhone and Haywood, the District Defendants failed to take any action to protect Jorie and other ETHS students, as required by their own policies. By failing to take action and stop the ongoing sexual harassment of Jorie that occurred in an open and apparent way on school grounds, they effectively condoned the behavior. *Id*.

Defendants Witherspoon and Campbell eventually terminated Haywood, but failed to disclose the allegations against Haywood to parents, and failed to provide Jorie any accommodations and support to ameliorate the harm done to her. The failure to remedy the problem in either situation shows that they either approved, participated in, or directed the conduct, and were then attempting to cover it up by taking no action in either instance.

### 2. Plaintiffs Have Adequately Pleaded an Equal Protection Claim

A plaintiff is entitled to seek relief under 42 U.S.C. § 1983 when a state actor violates an individual's right to be free from discrimination. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). To state an equal protection claim, a plaintiff must allege that (1) the defendants discriminated against her based on her membership in a definable class, and (2) the defendants

6

acted with a discriminatory purpose. *Id.* "Discriminatory purpose. . . implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects. . ." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). In short, a plaintiff must only allege that a state actor purposefully discriminated against another because of that person's identification with a particular (protected) group (i.e., gender). *Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216 (7th Cir. 1995).

Here, the Complaint adequately alleges that Defendants violated Jorie's rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating against her on the basis of her gender. Plaintiffs allege that Defendants Rhone and Haywood sexually groomed and abused Jorie Sterling and intentionally treated Jorie differently than other similarly situated students based on her gender. *See* Am. Compl. ¶ 64. Further, Defendants Witherspoon and Campbell, who were supervisors of Rhone and Haywood, knew about, condoned, and deliberately turned a blind eye to Rhone and Haywood's conduct, in violation of Jorie's rights under the Equal Protection Clause. *Id.* at ¶ 65.

### 3. Witherspoon and Campbell Are Not Entitled to Qualified Immunity.

Defendants claim that Witherspoon and Campbell are entitled to qualified immunity, but they are wrong. The Supreme Court has identified two key questions with respect to a qualified immunity defense: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court must compare the specific facts of the case "to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the

7

now specifically defined actions violated the clearly established law." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988).

Here, the law in this area has been well-established for some time. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 730 (3d Cir. 1989) (principal and assistant principal not entitled to qualified immunity for allegedly condoning teacher's sexual misconduct); *Doe v. Bd. of Educ. Of Consol. Sch. Dist. 230*, 18 F. Supp. 2d 954 (N.D. Ill. 1998) (genuine issue of material fact as to whether defendants turned a blind-eye to unconstitutional conduct prevented summary judgment for them on issue of qualified immunity); *Peck v. West Aurora School Dist. 129*, No. 06 C 1153, 2006 WL 2579678 at *4 (N.D. Ill. Aug. 30, 2006) (detailing the well-established law such that an administrator, knowing about alleged unconstitutional conduct violating one's right of bodily integrity under § 1983, could not turn a blind eye to it). Moreover, Plaintiffs have pleaded sufficient facts to show that Witherspoon and Campbell violated Jorie's constitutional rights through their inaction and deliberate indifference to the unlawful and violative conduct of ETHS Safety Officers Rhone and Haywood. Specifically, by allowing the abuse to continue on multiple occasions, Defendants violated Jorie Sterling's right to bodily integrity, a well-established right under the Due Process Clause of the Fourteenth Amendment. *Id*. Defendants' inaction was also targeted in that they allowed Rhone and Haywood to treat Jorie differently than other similarly-situated students based on her gender, which violated Jorie's rights under the Equal Protection Clause of the Fourteenth Amendment.

Finally, Defendants argue that Plaintiffs have not sufficiently pleaded facts that Witherspoon and Campbell had actual notice of the abuse and then allowed it to continue. To the contrary, Plaintiffs have alleged that the Defendants had knowledge due to the ongoing, widespread, and open and apparent conduct committed by their Safety Officers. Am. Compl. ¶¶

32-46. Such allegations are sufficient to state a claim on a motion to dismiss and therefore preclude qualified immunity.

However, even if the court determines that these are allegations are not sufficient (which they are), Defendants are still not entitled to qualified immunity because such a determination at this stage of the proceedings would be premature where the facts at the pleading stage (i) indicate that qualified immunity may not be appropriate and/or (ii) are not (and cannot be) sufficiently developed yet to assess whether qualified immunity exists as a matter of law. *Lanigan v. Village of Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997).

### B. PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR TITLE IX CLAIM.

Title IX provides that "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program . . . receiving Federal financial assistance." 20 U.S.C. § 1681(a); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). A school district can be liable for violating Title IX where it knew about the discrimination and harassment and was deliberately indifferent to the misconduct. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 277 (1998).

Here, Plaintiffs allege unequal treatment by the District Defendants in violation of Title IX. The District Defendants owed a duty to Jorie to provide and ensure an educational environment free of sex discrimination and sexual harassment. Jorie was treated differently from other similarly-situated students because of her gender. Her safety was put in jeopardy, and she and other students were subject to sexual abuse and harassment in an environment whose very purpose is to facilitate a safe environment to help them succeed academically.

Defendants claim there are no facts that the Board had notice of the unauthorized sexual conduct by Rhone or Haywood. This argument, however, ignores that the Board's knowledge is imputed based on the knowledge of Witherspoon and Campbell, who, as Principal and Assistant

Principal, are empowered by the Board to act and address misconduct that they are informed about by staff or by other students. It also ignores the allegations in the Complaint where Plaintiffs allege that Witherspoon, Campbell, and other ETHS staff knew of the allegations that Defendant Haywood had engaged in unlawful conduct and had preyed upon, harassed, and assaulted Jorie and other female ETHS students. *See* Am. Compl. ¶¶ 44-48. Under Title IX, Witherspoon and Campbell's knowledge of this conduct, their ability to address the misconduct, and their ultimate decision to turn a blind eye, is sufficient for pleading a Title IX claim as to the Board.

In addition, the Complaint alleges that Haywood himself admitted that other teachers had noticed the inappropriate and unlawful relationship between him and Jorie. Haywood's conduct was so open and notorious that Witherspoon and Campbell had to have had knowledge of the unlawful conduct and turned a blind eye to it. *See* Am. Compl. ¶¶ 43-46. Moreover, Defendant Rhone's conduct was also known to the District Defendants because, sometime after the conduct, Rhone was terminated by Witherspoon and Campbell. *Id*. at ¶¶ 35-36. At the very least, these allegations, when viewed together in the light most favorable to Plaintiffs plausibly shows that Defendants had knowledge of the unlawful conduct and failed to act. In this case, the knowledge that Jorie alleges Witherspoon and Campbell had, combined with their deliberate indifference in response to this in the hands of the very school officials with the authority to take action, is the kind of knowledge and authority that courts have required for Title IX liability. *Gebser*, 524 U.S. at 277.

Defendants claim that because the Complaint includes "on information and belief" allegations that it should be dismissed. However, courts have long recognized, even post-*Iqbal* that "[w]hen a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but [is] acknowledging that his allegations

10

are 'based on secondhand information that [he] believes to be true.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (citations omitted); *see also United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016) (holding that even under the heightened fraud pleading standard, information and belief pleading can withstand a motion to dismiss). Defendants' demand for "exacting detail" to state a claim at this early stage is not what the law requires. *See Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 928 (C.D. Ill. 2009) ("The minors are not required to make allegations in exacting detail in order to state a claim. If Defendants want more detail, they may seek it in discovery.").

### C.    PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR WILLFUL AND WANTON MISCONDUCT.

To sufficiently plead a claim for willful and wanton misconduct, a plaintiff must allege either a deliberate intention to harm, or an utter indifference to or a conscious disregard for the welfare of the plaintiff. *Burke v. 12 Rothschild's Liquor Mart*, 148 Ill.2d 429, 448 (1992). Defendants claim that they are immune under Section 2-201 of the Tort Immunity Act, but unlike other sections of the Tort Immunity Act, Section 2-201 does not create an exception for willful and wanton conduct. Further, as courts have explained, the general immunity granting provision of Section 2-201 is superseded by the more specific Section 2-202, which states that Defendants may be liable for acts that constitute willful and wanton conduct. 745 ILCS 10/2-202; *see Crudup v. Barton*, No. 98 C 1498, 2002 WL 276285, at *6-7 (N.D. Ill. Feb. 27, 2002). Indeed, "the Illinois Supreme Court has stated that Section 2-210 "'unambiguously' does not immunize" willful and wanton conduct because it "stat[es] expressly that the provided immunity applies only to conduct that is negligent." *Douglas v. Lofton*, 2013 U.S. Dist. LEXIS 70051, *18, 2013 WL 2156053 (N.D. Ill. May 17, 2013). Because Plaintiffs allege willful and wanton conduct, the general immunity under Section 2-201 does not apply here.

11

Defendants also assert immunity under Section 3-108(a) of the Tort Immunity Act, which provides "neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a). This argument also fails. Immunity does not apply where the public entity is alleged to have engaged in a "'course of action' that proximately caused the plaintiff's injuries," including having prior knowledge of similar incidents. *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 858-59 (N.D. Ill. 2010). Here, Defendants engaged in a course of continuing behavior that allowed their Safety Officers to commit ***over 90 unauthorized and unlawful sexual assaults and/or acts***, 50 acts by Defendant Rhone and 40 acts by Defendant Haywood. *See* Am. Compl. ¶¶ 34, 41. This conduct demonstrates a wanton disregard for ETHS's policies and a willful indifference to the safety of Jorie and other similarly-situated students. At the very least, the school had prior knowledge of similar incidents prior to Haywood's hiring, and knew of the need to institute new trainings and procedures for the school, and Safety Officers in particular, because they had previously fired Rhone for similar incidents. *Id*. ¶¶ 35-36.

Witherspoon and Campbell's failure to take action after either Safety Officer's conduct also constitutes proximate cause for Jorie's injuries. ETHS had school policies in place to protect the safety of their students. By allowing Jorie to be sexually harassed and abused, they failed to enforce these polices, which caused Jorie's injuries. After Rhone's unlawful conduct, the District Defendants should have been focused on preventing similar incidents from happening. Instead, they did nothing. Defendants took no measures to make sure their policies were being enforced, failed to notify any parents of the incident, and failed to offer Jorie any accommodations to make sure she had resources available to her. As a result of Defendants' conduct, Jorie was repeatedly

12

sexually harassed and assaulted, which caused the damages she experienced and continues to experience. These allegations are sufficient to allege willful and wanton conduct, and the Tort Immunity Act does not apply.

### D. THE BOARD IS LIABLE FOR THEIR EMPLOYEES' CONDUCT.

Under Illinois law, an employer is vicariously liable for the intentional torts of its employee if the tort is committed while the employee is acting within the scope of his employment. *Maras v. Milestone, Inc*., 348 Ill.App.3d 1004, 1007, 809 N.E.2d 825, 828 (2d Dist, 2004). A tort can fall within the scope of a person's employment even if the conduct was unauthorized or forbidden by the employer. *Id*. (*citing Wilson v. Clark Oil & Refining Corp*., 134 Ill.App.3d 1084, 1090-91, 481 N.E.2d 840 (1985)).

Here, the District Defendants claim they cannot be held vicariously liable under the doctrine of *respondeat superior* if their employees are not liable. However, as discussed above, the Complaint adequately alleges liability for the Board's employees (i.e., Witherspooon and Campbell); thus, the Board can be held vicariously liable for the actions of its employees and for failing to prevent the harm Jorie suffered.

Defendants also claim that Witherspoon and Campbell are not liable under Illinois law (and therefore the Board cannot be held liable). However, courts have long held that a supervisor can be liable for state law violations of his subordinates. *See Doe ex rel. Doe*, 627 F. Supp. 2d 905, 924-926 (C.D. Ill. 2009) (allowing the willful and wanton claim against the administrators to survive motion to dismiss); *Peck*, 2006 WL 2579678 (N.D. Ill. 2006) (allegations of willful and wanton supervision of teacher survived motion to dismiss); *Doe v. Sperlik*, 2005 WL 329918 *3 (N.D. Ill. 2005) (willful and wanton supervision claim against district allowed to proceed based on supervision of teacher). Here, the District Defendants were either aware of the violations or

13

deliberately turned a blind eye to the conduct. By taking no action, the District Defendants not only failed to enforce their policies, but failed to protect Jorie.

## V. CONCLUSION

For all the reasons discussed herein, the Court should deny Defendants' motion to dismiss in its entirety.

Date: March 16, 2020

/s/Andrew M. Stroth

Andrew M. Stroth
Carlton Odim
Amanda S. Yarusso

Action Injury Law Group, LLC
191 North Wacker Drive, Suite 2300
Chicago, IL 60606
(844) 878 4529
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com
amanda@actioninjurylawgroup.com

Karyn L. Bass Ehler

Grant & Eisenhofer, PA
30 N. LaSalle, Suite 2350
Chicago, IL 60602
312-610-5350
noticecrg@gelaw.com
kbassehler@gelaw.com
kevans@gelaw.com

*ATTORNEYS FOR PLAINTIFF*

CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system and email and/or mail.

By: /s/ Karyn L. Bass Ehler