**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JORIE STERLING and SOPHIA STERLING, | |
| Plaintiffs, | |
| v. | No. 19-cv-05599 |
| | Judge Franklin U. Valderrama |
| BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT 202, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jorie Sterling (Jorie) alleges that while she was a student at Evanston Township High School (ETHS), defendant Marvin Rhone (Rhone) and defendant Michael Haywood (Haywood), both ETHS safety officers, sexually groomed and sexually abused her. Jorie and her mother, Sophia Sterling (Sophia), brought suit against Haywood, Rhone, as well as the Board of Education of Evanston Township High School District 202 (the BOE); the superintendent of ETHS, defendant Eric Witherspoon (Witherspoon); and the assistant superintendent and principal of ETHS, defendant Marcus A. Campbell (Campbell) (collectively, District Defendants),

asserting claims arising under 42 USC § 1983, Title IX, the Illinois Gender Violence Act (IGVA) and several common law tort claims. R. 31, Am. Compl.[2]

District Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. 40, District Mot. Dismiss) and Rhone's Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. 42, Rhone Mot. Dismiss) are both before the Court. For the reasons that follow, District Defendants' Motion to Dismiss is granted in part and denied in part. Rhone's Motion to Dismiss is also granted in part and denied in part.

## Background

Jorie was a student at ETHS from 2015 (her freshman year) until she graduated in June 2019. Am. Compl. ¶¶ 10, 31.[3] The BOE and ETHS oversee a Special Education Department, which manages individualized education program (IEP) plans for eligible students under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq. Id.* ¶ 27. While a student at ETHS, Jorie was enrolled in an IEP plan to address particular needs and challenges she faced and to allow her to successfully earn her high school diploma. *Id.* ¶ 29. The BOE and ETHS also

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]Plaintiffs filed their original complaint on August 20, 2019 (R. 1, Compl.) and subsequently filed an amended complaint on December 12, 2019 (*see* Am. Compl.). By way of further procedural background, this case was originally pending before Judge Pallmeyer and was transferred to Judge Valderrama on September 28, 2020. R. 73.

[3]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

maintain a Safety Department whose primary function, among other things, is to provide security to ETHS and its campus. Am. Compl. ¶ 28.

In or about 2015, during her freshman year, Jorie came into contact with Rhone, who began sexually grooming her. *Id.* ¶ 31. Rhone's sexual grooming of Jorie included but was not limited to: (i) making personal cell phone calls to her during and outside of school hours; (ii) buying her gifts and meals; and (iii) sending text messages to Jorie with sexual or pornographic content and language. *Id.* ¶ 32. Rhone also engaged in over fifty unauthorized sexual acts and other contact with Jorie in 2015 and 2016. *Id.* ¶ 33. These acts occurred in and around ETHS, including in Rhone's car which was parked in the vicinity of ETHS. *Id.* ¶ 34. Witherspoon and Campbell terminated Rhone's employment in or about June 2016. *Id.* ¶ 35. Plaintiffs do not allege a reason for Rhone's termination.

Haywood began sexually targeting Jorie, and several other female ETHS student as soon as he began his employment with the BOE and ETHS in September 2018. Am. Compl. ¶¶ 36–37. His sexual grooming and targeting of Jorie and other students included, among other things: (i) sending text messages to Jorie and other students with sexual or pornographic content and language; (ii) sending sexual or pornographic photos to Jorie and other students, and pressuring them to send and receive the same from him; (iii) providing Jorie and other students with marijuana and alcoholic beverages and encouraging them to use those substances; and (iv) pressuring Jorie and other students to perform sexual acts and act sexually against their will. *Id.* ¶ 39. Haywood also engaged in over forty unauthorized sexual acts and

3

other contact with Jorie from September 2018 through January 2019, such acts taking place at various locations at ETHS, in the home of an ETHS teacher, in Haywood's own home, at a hotel in Evanston, and at other locations in Evanston. *Id.* ¶ 40. Haywood's employment was terminated on January 14, 2019. *Id.* ¶ 53. Plaintiffs do not allege a reason for Haywood's termination.

Following these events, Plaintiffs filed a Complaint against Defendants, which has since been amended. Plaintiffs' Amended Complaint asserts the following causes of action:

| Count No. | Plaintiff(s) | Cause of Action | Defendant(s) | Amended Complaint Paragraph Nos. |
|---|---|---|---|---|
| Count I | Jorie | 42 USC § 1983 Due Process | Rhone, Haywood, Witherspoon, and Campbell | ¶¶ 56–60 |
| Count II | Jorie | 42 USC § 1983 Equal Protection | Rhone, Haywood, Witherspoon, and Campbell | ¶¶ 61–66 |
| Count III | Jorie | Title IX Violations | BOE | ¶¶ 67–77 |
| Count IV | Jorie | Violation of the Illinois Gender Violence Act | Rhone and Haywood | ¶¶ 78–80 |
| Count V | Jorie | Intentional Infliction of Emotional Distress | Rhone and Haywood | ¶¶ 81–84 |
| Count VI | Jorie | Battery | Rhone and Haywood | ¶¶ 85–86 |
| Count VII | Jorie | Willful and Wanton Conduct | District Defendants | ¶¶ 87–93 |
| Count VIII | Sophia | Willful and Wanton Conduct | District Defendants | ¶¶ 94–100 |

4

| Count IX | Plaintiffs | Respondeat Superior | BOE | ¶¶ 101–103 |
| Count X | Plaintiffs | 745 ILCS 10/9-102 Indemnification | BOE | ¶¶ 104–106 |

District Defendants and Rhone move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). District Mot. Dismiss; Rhone Mot. Dismiss.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Federal Claims Against District Defendants

### A. Count I – Section 1983 Due Process Claim

In Count I, Plaintiffs assert a Section 1983 claim, alleging that Rhone, Haywood, Witherspoon, and Campbell violated Jorie's rights to bodily integrity under the Due Process Clause of the Fourteenth Amendment and caused the alleged injuries, namely that Rhone and Haywood sexually groomed and abused Jorie. Am. Compl. ¶¶ 57–58.

Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a Section 1983 claim, a plaintiff must show that they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). A plaintiff may only bring a Section 1983 claim against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). "Moreover, under § 1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates . . . . Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* at 614–15 (internal citations omitted).

District Defendants argue that not only have Plaintiffs failed to allege that Campbell and Witherspoon were personally involved in any unconstitutional conduct,

but also that Plaintiffs failed to allege any facts that Campbell and Witherspoon were aware of Haywood's and Rhone's conduct or the abuse.[4] Instead, District Defendants submit that Plaintiffs seek to impermissibly hold Campbell and Witherspoon liable under a theory of *respondeat superior*. R. 43, District Memo. at 4–7. The Court agrees.

It is plain that Plaintiffs cannot hold Witherspoon and Campbell liable for Section 1983 claims based on Rhone's and Haywood's conduct under a doctrine of *respondeat superior* liability. *See Doyle*, 305 F.3d at 614–15. However, Plaintiffs have also failed to allege facts necessary to hold Witherspoon and Campbell personally liable under Section 1983 based on their own conduct or knowledge. *See Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988) (noting that supervisors can only be held liable for their personal involvement in unconstitutional conduct, which must rise above the level of inactionable negligence or gross negligence). In their Amended Complaint, Plaintiffs allege that Witherspoon, Campbell, the BOE, and other ETHS teachers, counselors, and staff knew of allegations that Haywood had sexually groomed and had unlawful sexual contact with Jorie and other ETHS students. Am. Comp. ¶ 44. Plaintiffs further allege that despite District Defendants' knowledge,

---

[4]District Defendants also argue that Plaintiffs' allegations that Witherspoon and Campbell failed to disclose Haywood's conduct to parents and failed to provide an accommodation to Jorie do not support their claims in Counts I and II because Witherspoon's and Campbell's conduct following the abuse could not have *caused* the abuse. District Memo. at 6. In other words, Witherspoon and Campbell were not personally involved in the constitutional deprivation. The Court agrees that Witherspoon's and Campbell's conduct after Haywood was terminated had no bearing on Plaintiffs' Section 1983 claims because these claims rests on Haywood's conduct. *See Thurman*, 446 F.3d at 687.

they took no actions to protect Jorie and other ETHS students from Haywood's continued acts. *Id.* ¶ 45.

Yet, as Defendants argue, Plaintiffs' allegations of Witherspoon's or Campbell's personal involvement are devoid of any factual support or information. Plaintiffs allege neither that Witherspoon or Campbell witnessed any of Haywood's or Rhone's conduct while it was ongoing nor that abusive conduct was ever reported to them. District Memo. at 5. Without any allegations supporting how Witherspoon or Campbell knew of Haywood's conduct, the Court cannot make the causal connection necessary to infer that Witherspoon or Campbell knew of the conduct yet failed to stop it. *Id.* at 4–5 (citing *Wold-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). If Witherspoon and Campbell did turn a blind eye to Haywood's and/or Rhone's conduct, then Plaintiffs must allege facts that would lead to the conclusion, if not inference, that Witherspoon and or Campbell had notice of their conduct.

Accordingly, the Court finds that in viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs have failed to adequately plead their Section 1983 due process claim. The Court grants District Defendants' motion with respect to Count I.

### B. Count II – Section 1983 Equal Protection Claim

In Count II, Plaintiffs allege that Rhone, Haywood, Witherspoon, and Campbell violated Jorie's rights under the Equal Protection Clause of the Fourteenth Amendment and caused the alleged injuries. Am. Compl. ¶ 62. "The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from

8

discriminating on the basis of certain protected classifications and also bars governments from treating a person irrationally as a so-called 'class of one.'" *Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *6 (N.D. Ill. Mar. 24, 2020) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). "For an equal-protection claim based on class membership[,] to survive a motion to dismiss, a plaintiff must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent." *Id.* (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)). "The other form of equal-protection claim is different: a class-of-one claim requires the plaintiff to allege that (1) a state actor intentionally treated them 'differently than others similarly situated, and (2) there is no rational basis for the difference in treatment.'" *Id.* (citing *Reget*, 595 F.3d at 695).

District Defendants again argue that Plaintiffs fail to allege any facts that Witherspoon or Campbell were personally involved in the alleged constitutional violations. District Memo. at 4–7. For the same reasons stated above, the Court finds that Plaintiffs have failed to adequately plead their equal protection claim. *See Doyle*, 305 F.3d at 614–15. On this basis alone, the Court grants District Defendants' motion with respect to Count II.[5]

## C. Count III – Title IX Claim

In Count III, Plaintiffs allege that because the BOE (through faculty, administrative staff, and other personnel) acted with deliberate indifference to and

---

[5] Based on the Court's findings thus far, the Court need not address District Defendants' additional arguments with respect to Counts I and II.

with conscious disregard of the rights and safety of Jorie and other ETHS students, the BOE is liable under Title IX for discrimination based on its failure to take sufficient and meaningful corrective action. Am. Compl. ¶¶ 72–75.

District Defendants argue that Plaintiffs' allegations do not and cannot establish a violation of Title IX against the BOE because Title IX does not prohibit sexual harassment but instead prohibits school districts from discriminating on the basis of sex in providing education benefits. District Memo. at 9. They also argue that Plaintiffs have failed to allege that the BOE itself had notice of Rhone's or Haywood's conduct. *Id.* at 11. District Defendants further argue that Plaintiffs neither allege that the BOE was aware of Rhone's conduct; that any student, teacher, or staff member complained to the BOE about Haywood's conduct; nor that any ETHS official personally observed Rhone's or Haywood's conduct. *Id.* They also contend that Plaintiffs do not allege when the BOE became aware of Haywood's conduct, which is information necessary to determine whether the BOE failed to take timely corrective action in response. *Id.*[6]

Plaintiffs retort that a school district can be liable for violating Title IX when it knew about the discrimination and harassment and was deliberately indifferent to the misconduct. Resp. District at 9. They argue that they have alleged unequal treatment by District Defendants, because District Defendants owed a duty to Jorie to provide and ensure an educational environment free from sexual discrimination

---

[6]District Defendants also reference Plaintiffs' allegation regarding "Complaint Managers" within ETHS (Am. Comp. ¶¶ 48–52), but the Court notes that Plaintiffs fail to connect these Complaint Managers to the BOE or its actions.

and harassment; Jorie was treated differently from other similarly-situated students because of her gender; and her safety was put in jeopardy in an environment that should be a safe academic space. *Id.* Plaintiffs maintain that Witherspoon's and Campbell's knowledge is imputed to the BOE and that their allegations of Witherspoon's and Campbell's knowledge, ability to address the misconduct, and subsequent turning of blind eyes are sufficient for pleading a Title IX claim against the BOE. *Id.* at 9–10. Plaintiffs also contend that Haywood himself admitted that other teachers had noticed his relationship with Jorie and that his conduct was so open and notorious that Witherspoon and Campbell must have had knowledge of it. *Id.* at 10. Finally, they claim that it was sufficient for them to plead these allegations based on information and belief and that such allegations satisfy the federal pleading standard to withstand a motion to dismiss. *Id.* at 10–11.

As an initial matter, the District Defendants' interpretation of Title IX is incorrect. True, "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). *See also* 20 U.S.C. § 1681(a) ("[N]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."). However, "Title IX's ban on 'discrimination' prohibits a teacher or other school employee from sexually harassing or abusing a student." *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *2 (citing *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 75 (1992) ("[W]hen a supervisor sexually harasses a subordinate because of the

11

subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex . . . . [T]he same rule should apply when a teacher sexually harasses and abuses a student.") (internal citations omitted); *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1224–25 (7th Cir. 1997) (analyzing a student's allegations of sexual abuse by a cafeteria worker as a Title IX claim)).

Yet, District Defendants are correct that Title IX does not allow for vicarious liability. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998). "[S]tudents who are sexually harassed by school employees are only entitled to recover damages against the school district if a school official with 'authority to institute corrective measures' had actual knowledge of, and was deliberately indifferent to, the misconduct." *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *2 (quoting *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012)). In order to establish "actual notice," the plaintiff must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct. *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008). "School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*. 768 F.3d 611, 618 (7th Cir. 2014). If a plaintiff clears that hurdle, "a plaintiff in a Title IX case must also adequately allege that (1) the educational institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of the plaintiff's education, or deprived the plaintiff of access to educational opportunities or benefits

provided by the school." *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *2 (citing *N. Lawrence Cmty. Sch. Corp.*, 131 F.3d at 1228).

Here, the Court finds once again, that Plaintiffs have failed to adequately allege the BOE's actual knowledge of the misconduct. Although Plaintiffs allege that the BOE, Witherspoon, and Campbell "knew" of Haywood's/Rhone's conduct and failed to take timely action (Am. Compl. ¶¶ 44–45), Plaintiffs fail to allege that any member of the BOE, Witherspoon, or Campbell witnessed Haywood's/Rhone's conduct or that such conduct was reported to them while it was happening. *See* District Memo. at 11. Indeed, even if the allegations about the BOE had sufficiently implicated a BOE or ETHS official with the authority to take corrective steps, the Title IX claim still fails because there are no facts to suggest that an official knew of Rhone's or Haywood's conduct abuse *at the time it was happening. See St. Francis Sch. Dist.*, 694 F.3d at 872–73. Nor are there any facts to suggest that Rhone or Haywood had some known history of sexual misconduct that would impute some sort of knowledge on the BOE's behalf. *Cf. Hansen*, 551 F.3d at 605–606 (explaining in *dicta* that even if a school district did not know a teacher was harassing a particular plaintiff, it might still be found to have "actual knowledge" if the teacher was a known "serial harasser"). "Where a school official learns of sexual harassment against a plaintiff only after the fact, they do not have 'actual' notice or knowledge within the meaning of Title IX." *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *4 ("*See, e.g., St. Francis Sch. Dist.*, 694 F.3d at 872–73 (school officials who heard only suspicions of sexual misconduct, and then only learned about teacher's sexual abuse of victim

13

after-the-fact, did not have 'actual knowledge' under Title IX); *Trentadue v. Redmon*, 619 F.3d 648, 653 (7th Cir. 2010) (no actionable knowledge where school officials only found out about instructor's sexual abuse of student several weeks later.").

As a result, the Court finds that Plaintiffs have failed to adequately plead a Title IX claim under Count III and grants Districts Defendants' motion with respect to Count III.

## II. State Law Claims Against District Defendants

### A. Supplemental Jurisdiction Over State Law Claims

Before evaluating District Defendants' arguments attacking the remaining state law claims against them, the Court must first address jurisdiction. Because the Court has dismissed all of the federal claims against District Defendants (albeit without prejudice for now), the Court must consider whether to relinquish supplemental jurisdiction over the state law claims against District Defendants. Under 28 U.S.C. § 1367(a), it is undisputed that the Court has supplemental jurisdiction over Plaintiffs' state law claims (including those advanced against District Defendants) because those claims are based on the same factual allegations as the federal claims. *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *11 (quoting 28 U.S.C. § 1367(a)). "That said, federal district courts usually relinquish supplemental jurisdiction over state claims 'whenever all federal claims have been dismissed prior to trial." *Id.* (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). "This presumption of relinquishment is written into 28 U.S.C. § 1367(c)(3), which gives district courts the discretion to 'decline to exercise

supplemental jurisdiction over a claim . . . if . . . the district court has dismissed *all claims* over which it has original jurisdiction.'" *Id.* (quoting *Hansen*, 551 F.3d at 607) (emphasis in original).

In this case, however, the Court has not dismissed *all* federal claims over which the Court has original jurisdiction. Specifically, the Court still has federal-question jurisdiction over the Section 1983 claims against Rhone and Haywood. As such, the Court's presumption to relinquish supplemental jurisdiction has not yet been triggered. *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *11 ("*See Hansen*, 551 F.3d at 607–08 (holding that retention of supplemental jurisdiction over state claims against school district was proper where federal claims against co-defendant remained). *See also, e.g., Wilson v. Adams*, 901 F.3d 816, 823 (7th Cir. 2018) (affirming retention of supplemental jurisdiction over state-law negligence claim even though all federal claims were dismissed on summary judgment); *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) (explaining that '[a]lthough a district court may relinquish supplemental jurisdiction following the dismissal of all federal claims, it is not required to do so, unless the federal claims are frivolous and so do not engage the jurisdiction of the federal courts.'); *Groce*, 193 F.3d at 500 ('[O]ur case law makes clear that the district court did not automatically lose [supplemental] jurisdiction once it granted summary judgment on [plaintiff's] ADA claim.'). What's more, '[b]ecause the state and federal claims arise from a common factual nucleus, judicial economy would best be served by deciding all of the claims in this Court[,]' especially given that 'the state claims are

15

unlikely to require significantly more factual development than already will be required by the remaining federal claims.' *Satkar Hosp. Inc. v. Cook Cty. Bd. of Rev.*, 819 F. Supp. 2d 727, 739 (N.D. Ill. 2011).""). For this reason, the Court retains supplemental jurisdiction over the state law claims against District Defendants despite the dismissal of the federal claims against them. The Court now turns to the state law claims against District Defendants.

### B. Counts VII and VIII – Willful and Wanton Conduct Claims

In Counts VII and VIII, Plaintiffs allege that District Defendants owed a duty to supervise their employees and to provide a safe and secure educational environment free from sexual abuse or other conduct that would endanger Jorie's physical safety and psychological well-being (Am. Compl. ¶¶ 88, 95); (ii) breached their duty by willfully and wantonly supervising or failing to supervise Rhone and Haywood (*id.* 90, 97); (iii) were deliberately indifferent and/or consciously disregarded Jorie's physical safety and psychological well-being, amounting to willful and wanton conduct (*id.* 92, 99); and (iv) as a direct and proximate result of such willful and wanton conduct, Jorie suffered abuse by Rhone and Haywood and has suffered and will continue to suffer extreme mental and emotional distress, and Sophia has been harmed and experienced severe emotional distress (*id.* 93, 100).

District Defendants attack these claims on three bases. District Memo. at 12. First, they argue that Plaintiffs' claims appear to be based on an alleged failure to supervise, and as such, cannot survive under Section 2-201 of the Tort Immunity Act. *Id.* at 12–13. Second, they maintain that they are immune under Section 3-108(a) of

16

the Tort Immunity Act. *Id.* at 13–14. Third, they argue that Plaintiffs fail to plead facts showing that District Defendants had knowledge of Haywood's conduct, had prior knowledge of any similar incidents, or that they consciously or knowingly engaged in a course of action showing a deliberate intention to cause harm or utter indifference to or conscious disregard for Jorie or Sophia. *Id.* at 14–15.

Plaintiffs respond that Section 2-201 of the Tort Immunity Act does not create an exception for willful and wanton conduct. Resp. District at 11. Further, they argue that Section 2-202 supersedes the general immunity provision of Section 2-201, and Section 2-202 allows for District Districts to be held liable for willful and wanton conduct. *Id.* They also assert that Section 3-108(a) of the Tort Immunity Act does not apply because District Defendants engaged in a course of continuing behavior that allowed Rhone and Haywood to commit over a combined 90 unauthorized and unlawful sexual assaults and/or acts. *Id.* at 12. Because ETHS had prior knowledge of similar incidents before Haywood's hiring, Plaintiffs contend that it should have instituted new trainings and procedures at ETHS. *Id.*

The Tort Immunity Act "governs whether and in what situations local governmental units are immune from civil liability." *Reyes v. Bd. of Educ. of City of Chi.*, 139 N.E.3d 123, 133 (Ill. App. Ct. 2019) (quoting *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 851 (Ill. 2001)). It provides affirmative defenses, *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003), and plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs, Inc.*, 782 F.3d

17

922, 928 (7th Cir. 2015). However, plaintiffs may effectively plead themselves out of court by alleging facts sufficient to establish the affirmative defense in the complaint itself and, in such cases, dismissal is appropriate. *Id.*

The Court addresses whether Plaintiffs have sufficiently pled their claims before addressing District Defendants' asserted defenses under the Tort Immunity Act.

### i. Knowledge Requirement

District Defendants assert that Plaintiffs fail to plead any facts that show District Defendants had knowledge of Haywood's conduct or that they had prior knowledge of any similar incidents. District Memo. at 14. They also argue that Plaintiffs fail to allege facts that District Defendants consciously or knowingly engaged in a course of action showing a deliberate intention to cause harm or an utter indifference to or conscious disregard for Jorie or Sophia. *Id.* at 14–15.

"There 'is no separate and independent tort of willful and wanton conduct . . . . It is regarded as an aggravated form of negligence.'" *Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *14 (quoting *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010)). "So to 'recover damages based upon a defendant's alleged negligence involving willful and wanton conduct,' a plaintiff must still allege that the 'defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury.'" *Id.* (same). "The difference, however, is that the plaintiff must also 'allege either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff.'" *Id.*

(quoting *Doe ex rel. Ortega-Piron v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004)). Additionally, to successfully maintain a willful and wanton failure to supervise claim against a public entity, a plaintiff must show that the defendant engaged in a "course of action that proximately caused the plaintiff's injuries, including having prior knowledge of similar incidents." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010).

Here, Plaintiffs allege a duty to supervise on behalf of District Defendants, a breach of that duty, and that the breach and corresponding course of action was the proximate cause of their injuries. Am. Compl. ¶¶ 88, 90, 93, 95, 97, 100. Plaintiffs also allege that District Defendants were deliberately indifferent and/or consciously disregarded Jorie's physical safety and psychological well-being. *Id.* ¶¶ 92, 99. Plaintiffs further allege that District Defendants were aware of the risk of sexual abuse of minor students by ETHS staff and the need to supervise staff and report any sexual misconduct or abuse allegations. *Id.* ¶¶ 89, 96.

In attacking these allegations, District Defendants appear to rely on the same arguments used to challenge Plaintiffs' Section 1983 and Title IX claims. But here, recklessness based on knowledge of the risk of misconduct is enough for willful and wanton conduct. *See O'Brien v. Twp. High Sch. Dist. 214*, 415 N.E.2d 1015, 1018 (Ill. 1980) (the full definition is that a willful and wanton injury "must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the

19

danger through recklessness, or carelessness when it could have been discovered by ordinary care."). Plaintiffs can state a claim for willful and wanton conduct based on District Defendants' knowledge of the risk of misconduct. *See St. Francis Sch. Dist.*, 694 F.3d at 871. The Court finds that Plaintiffs have adequately alleged that District Defendants were aware of the risk of sexual abuse, and accordingly, have sufficiently pled their Count VII and Count VIII claims for willful and wanton conduct. The Court next addresses Defendants' asserted defenses to these claims under the Tort Immunity Act.

### ii.    Section 2-201

Section 2-201 provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. "While section 2–201 refers to a public employee, local governments are also clothed with immunity if their employees are not liable for the injury resulting from their acts or omissions." *LaPorta v. City of Chi.*, 277 F. Supp. 3d 969, 997 (internal citations omitted). Section 2-201 provides immunity from liability for both negligent and willful and wanton misconduct. *Hascall v. Williams*, 996 N.E.2d 1168, 1175 (Ill. App. Ct. 2013). Illinois courts apply the following two-part test to determine which employees may be granted immunity under Section 2-201: the employee (1) must "hold[ ] *either* a position involving the determination of a policy *or* a position involving the exercise of discretion," and (2) "must also have engaged in both the determination

20

of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted." *Id.* (emphasis in original). A policy choice is one "that require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.* (quoting *Harrison*, 758 N.E.2d at 852). A discretionary act is one "unique to a particular public office"; in contrast, a ministerial act is one "which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.* at 1176 (quoting *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995)).

The Court finds that Plaintiffs' arguments regarding Section 2-201 fail. First, Plaintiffs contend that Section 2-201 does not create an exception for willful and wanton conduct (without citing to any legal authority) (Resp. District at 11), but Illinois law says otherwise. *See Hascall*, 996 N.E.2d at 1175. Second, Plaintiffs cite to *Crudup v. Barton*, 2002 WL 276285, at *6–7 (N.D. Ill. Feb. 27, 2002) for the proposition that Section 2-202 supersedes Section 2-201. Resp. District at 11. Not only is that a mischaracterization of the *Crudup* holding, but Plaintiffs do not explain why a Section 2-202 analysis, which removes immunity for willful and wanton conduct for execution or enforcement of law, is even relevant here. Defendants clearly assert an affirmative defense under Section 2-201, not Section 2-202. *See* 745 ILCS 10/2-202. Finally, Plaintiffs appear to confuse Sections 2-201 and *2-210*, by arguing that the Illinois Supreme Court has stated that Section 2-210 "unambiguously does

not immunize willful and wanton conduct." Resp. District at 11 (citing *Douglas v. Lofton*, 2013 WL 2156053 (N.D. Ill. May 17, 2013)). Again, an interpretation of Section 2-210, which concerns negligent misrepresentation or provision of information, is not relevant here, as District Defendants have not invoked Section 2-210. *See* 745 ILCS 10/2-210.

Putting Plaintiffs' confusion about the relevant provisions aside, even though District Defendants argue that Witherspoon's and Campbell's decisions were discretionary (District Memo. at 12), deciding whether Section 2-201 applies is a fact-specific inquiry and can be done "only on the particular facts established in a particular case." *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 923 (C.D. Ill. 2009) (citing *Snyder*, 657 N.E.2d at 993 ("[T]his court has long recognized that the distinction between discretionary and ministerial functions resists precise formulation.")). The Court cannot determine whether any of the alleged failures Plaintiffs attribute to District Defendants implicate a discretionary policy decision for the purposes of Section 2-201. *See White*, 627 F. Supp. 2d at 923 (Such an "important decision" as whether Section 2-201 applies to bar a minor's tort claims "deserves a fully developed factual record."). Because the Court needs more facts to make such a decision, the Court finds that it cannot determine if Witherspoon and Campbell are immune, under Section 2-201, from Plaintiffs' willful and wanton

conduct claims at this stage. As such, the Court does not dismiss Counts VII and VIII based on Section 2-201 immunity at this time.

### iii.   Section 3-108

District Defendants also argue that Counts VII and VIII must be dismissed because Section 3-108 of the Tort Immunity Act provides immunity. District Memo. at 13–14. Section 3-108 provides:

> (a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

> (b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury.

745 ILCS 10/3-108.

Admittedly, the Court is perplexed by the District Defendants' argument here. The plain language of Section 3-108 indicates that it immunizes public entities against injuries proximately caused by the negligent "supervision" of any "activity" on public property. *Id.* This provision provides immunity only for negligent conduct and does not extend to willful and wanton conduct. *Id.* Indeed, the only case cited by the District Defendants in support of their motion to dismiss, *Brookman v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, 2019 WL 473595, at *4 (N.D. Ill. Sept. 27, 2019), (*see* District Memo. at 13–14), reaffirms this proposition. Therefore, Section 3-108

23

offers no immunity to District Defendants for Plaintiffs' willful and wanton conduct claims.

All in all, because Plaintiffs have adequately pled their Count VII and Count VIII claims for willful and wanton conduct, and because the applicability of a Section 2-201 affirmative defense cannot be determined at this time, the Court denies District Defendants' motion to dismiss with respect to Counts VII and VIII.

### C.  Counts IX and X – *Respondeat Superior* and Indemnification Claims

In Count IX, Plaintiffs seek to hold the BOE liable for their state law claims against Witherspoon, Campbell, Haywood, and Rhone pursuant to a theory of *respondeat superior* liability. Am Compl. ¶ 103.

"An employer may be held liable for the acts of its employees under the doctrine of *respondeat superior* . . . . The employer will be responsible, however, only when the employee's acts were committed within the scope of his employment." *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 60 (Ill. App. Ct. 2012) (internal citations omitted). An employee's actions fall within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer*, 543 N.E.2d 1304, 1309 (Ill. 1989) (internal citations omitted). Illinois courts have explained that "[w]here an employee's deviation from the course of employment is slight and not unusual, a court may find . . . that the employee was still executing the employer's business. Conversely, when a deviation is exceedingly marked and unusual, as a matter of law the employee may

24

be found to be outside the scope of employment." *Stern v. Ritz Carlton Chi.*, 702 N.E.2d 194, 196 (Ill. App. Ct. 1998). Moreover, where an employee commits an intentional tort "purely in his own interest" vicarious liability does not apply. *Randi F. v. High Ridge YMCA*, 524 N.E.2d 966, 970 (1988). Under Illinois law, sexual assaults committed by an employee are generally considered outside the scope of employment. *See Stern*, 702 N.E.2d at 198 (holding that the hotel-employer was not vicariously liable for its employees' actions because the "sexual assault of plaintiffs during the course of each massage could in no way be interpreted as an act in furtherance of the business interests of the [employer]."); *Lawrence Hall Youth Servs.*, 966 N.E.2d at 61 (holding that "sexual assault by its very nature precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of respondeat superior"); *Deloney v. Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 798 (Ill. App. Ct. 1996) (holding that acts of sexual misconduct were outside the scope of the truant officer's employment as a matter of law).

The same is true here. Rhone and Haywood were security guards at ETHS, and their primary responsibilities were "to provide security coverage in school and around campus, to monitor and regulate the entrance and exit of students into the high school buildings, to monitor visitor check-ins, to assist students and staff with conflict resolution, and to collaborate with law enforcement." Am. Compl. ¶ 28. Even though much of the conduct Plaintiffs attribute to Rhone and Haywood occurred during school hours and on or near ETHS property, their alleged conduct falls outside the scope of their employment under Illinois law. In their Response, Plaintiffs do not

25

account for the sexual misconduct rule announced in *Stern* and *Deloney*. Instead, they cite to case law for the general proposition that "a supervisor can be liable for state law violations of his subordinates." Resp. District at 13. In doing so, Plaintiffs not only fail to distinguish *Stern* and *Deloney*, but also effectively concede this argument.

As such, the Court grants District Defendants' motion for the purposes of *respondeat superior* liability under Count IX with respect to Plaintiffs' state law claims against Rhone and Haywood. Additionally, to the extent, as Defendants suggest, that Plaintiffs seek to hold the BOE liable under *respondeat superior* for the Section 1983 claims against Witherspoon and Campbell, the Court grants District Defendants' motion on these same grounds as well. The Court denies District Defendants' motion as to Count IX for any liability attributed to Witherspoon and Campbell under Plaintiffs' state law claims.

In Count X, Plaintiffs seek to hold the BOE liable for indemnification for any damages awarded against Witherspoon and Campbell based on their alleged acts. Am Compl. ¶ 106. Other than a heading in their motion (District Memo. at 15), District Defendants do not address Plaintiffs' indemnification claim in either their motion or reply. Regardless, the Court finds that under Count X, Plaintiffs have sufficiently pled an indemnification claim against the BOE based on any damages Plaintiffs may

secure against Witherspoon or Campbell under Counts VII and VIII. The Court denies District Defendants' motion as to Count X.

### III.     Rhone's Motion to Dismiss

Rhone makes two arguments in his motion to dismiss. First, Rhone argues that the Amended Complaint contains legal conclusions only, and second, he argues that Plaintiffs fail to sufficiently plead a Section 1983 claim against him. *See generally* Rhone Mot. Dismiss. The Court will address each of Rhone's arguments in turn.

### A. Conclusory Allegations, Generally

Rhone makes the following claims that Plaintiffs' allegations are conclusory: (i) the allegation in paragraph 33 stating ". . . over fifty (50) acts of unauthorized sexual acts and other contact with Jorie Sterling, a minor" is conclusory and does not satisfy *Iqbal* (Rhone Mot. Dismiss at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))); (ii) again in reference to paragraph 33, "some completely unknown [sic] behavior constituted a 'sex act,'" and that one is left to speculate as to what sex acts allegedly occurred (Rhone Mot. Dismiss at 4); (iii) the language of Count II is "purely conclusory and speculative" (*id.*); (iv) paragraphs 78–80 under Count IV merely state legal conclusions and no facts attributing any particular behavior to any particular defendant (*id.* at 5); (v) under Count V and Count VI, there is no act specifically attributed to Rhone (*id.* at 6); and (vi) the Amended Complaint does not contain "even a skeletal description of the sexual conduct complained of in every claim." *Id.*

The Court finds that Rhone's characterizations ignore numerous factual allegations in the Amended Complaint. Specifically, Plaintiffs attribute the following

27

acts to Rhone: "making personal cellular telephone calls to Jorie during and outside of school hours"; "buying gifts and meals for Jorie"; and sending text messages to Jorie during and outside of school hours with sexual and/or pornographic content and language." Am. Compl. ¶ 32. Plaintiffs also allege that his acts and contact with Jorie occurred in and around ETHS, including in his car. *Id.* ¶ 34. While Plaintiffs do not describe each of the fifty alleged acts and contact in detail, the allegations taken together satisfy the federal pleading standard by putting Rhone on notice of the claims against him. Moreover, Rhone fails to acknowledge that in each count, Plaintiffs have incorporated each of the preceding allegations, obviating the need for Plaintiffs to restate Rhone's conduct for each count. The Court finds that Plaintiffs' allegations are not impermissibly conclusory and denies Rhone's motion to dismiss on this basis.

### B. Section 1983 Equal Protection Claim

Rhone's second argument is that Plaintiffs have failed to plead the elements necessary for the Section 1983 equal protection claim against him. Rhone Mot. Dismiss at 5. In their Amended Complaint, Plaintiffs allege the following: "Defendants Rhone and Haywood sexually groomed and abused Jorie Sterling, intentionally treating Jorie differently than other similarly situated students based on her gender." Am. Compl. ¶ 63. Yet, Plaintiffs fail to allege that Rhone's conduct was based on Jorie's gender or that he intentionally treated her differently than others similarly situated. *See Reget*, 595 F.3d at 695. Based on the fact that Plaintiffs' equal protection claim appears to be a class-of-one claim, the Court also notes that

28

Plaintiffs have failed to allege the second element of a class-of-one claim, that "there is no rational basis for the difference in treatment." *Reget*, 595 F.3d at 695.The Court accordingly grants Rhone's motion to dismiss with respect to Count II only.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part District Defendants' Motion to Dismiss [40], as follows:

- grants the motion with respect to Count I;

- grants the motion with respect to Count II;

- grants the motion with respect to Count III;

- denies the motion with respect to Count VII;

- denies the motion with respect to Count VIII;

- grants the motion with respect to Count IX as it relates to Plaintiffs' Section 1983 claims against Witherspoon and Campbell, and state law claims against Rhone and Haywood;

- denies the motion with respect to Count IX as it relates to Plaintiffs' state law claims against Witherspoon and Campbell; and

- denies the motion with respect to Count X.

The Court also grants in part and denies in part Rhone's Motion to Dismiss [42], as follows:

- denies the motion with respect to Count I;

- grants the motion with respect to Count II;

- denies the motion with respect to Count IV;

- denies the motion with respect to Count V; and

- denies the motion with respect to Count VI.

The Court's dismissal of the above-mentioned counts is without prejudice, and the Court grants leave to Plaintiffs to file an amended complaint on or before 03/31/2021, to the extent they choose to do so. If Plaintiffs do not file an amended complaint on or before 03/31/2021, the Court directs District Defendants to answer, where applicable, Counts VII, VIII, IX, and X on or before 04/21/2021, and directs Rhone to answer Counts I, IV, V, and VI on or before 04/21/2021. If Plaintiffs file an amended complaint on or before 03/31/2021, the Court directs District Defendants and Rhone to answer or otherwise plead in response on or before 04/21/2021.

Dated: March 3, 2021

_____
United States District Judge
Franklin U. Valderrama